# HARTER *v.* BARRETT.

PATENTS; INTERFERENCE; HUSBAND AND WIFE; WITNESSES.

1. Where one of the parties to an interference has a patent for an invention the burden is on the other party to show beyond a reasonable doubt that he was the first inventor.

2. If the testimony of the wife of one of the parties to an interference in his favor is admissible at all, and if disclosure to a wife is disclosure to others or to the public, in the sense of the patent law, which is doubtful, such testimony must be rigidly scrutinized, and not lightly admitted,—especially if uncorroborated.

3. Where the senior party to an interference saw working drawings and a model of the invention of the issue, made by the junior party, and understood their construction, and said nothing about any previous conception or disclosure of the invention by himself, although both parties were at the time in the employment of the same company, which was engaged in the manufacture of similar devices, and the superintendent of which had solicited suggestions from its employees for improvement of such devices, and remained silent for a year before he filed his application, such conduct on his part is inconsistent with the existence of a right which he was desirous to protect, and the junior party will be entitled to an award of priority.

No. 276. Patent Appeals. Submitted November 17, 1904. Decided December 7, 1904.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Charles W. Forbes, Mr. Worth Osgood,* and *Mr. J. S. Barker* for the appellant.

*Mr. J. I. Kay* and *Mr. F. W. Winter* for Barrett.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference case, wherein the subject-matter of

controversy is an invention relating to a machine for the shap-
ing of wrought-steel serpentine boiler headers. The object and
purposes of the invention are thus succinctly stated by the Ex-
aminer of Interferences in his opinion filed in this case:

"These headers are substantially rectangular tubular boxes
supporting a series of water tubes arranged in staggered rela-
tion to one another. In order that the tubes may be placed as
close together as possible, it is desirable to form the headers
with corrugated or serpentine faces, and to nest them closely one
to the other. Prior to the invention in issue this corrugating
had been done by pressing the headers between suitably shaped
dies. The essential elements of the invention herein involved
are corrugated rolls arranged to revolve adjacent to each other,
together with a mandrel to support the inner faces of the tube
between the rolls during the process of shaping the header by
means of the rolls. The specific embodiments of the invention
are different, and the counts of the issue relate to the generic in-
vention."

These counts, in which the invention is formally stated, are
five in number, and are as follows:

"1. In an apparatus for shaping wrought-metal headers or
other tubular bodies of irregular outline longitudinally, the
combination of rolls arranged to revolve adjacent to each other
and having longitudinal corrugations on their faces, a mandrel
adapted to support the inner faces of the tube between the rolls
during the shaping process, and means for actuating said man-
drel.

"2. In an apparatus for shaping wrought-metal headers or
other tubular bodies of irregular outline longitudinally, the
combination of rolls arranged to revolve adjacent to each other
and having longitudinal corrugations on their faces, and a man-
drel adapted to support the inner faces of the tube between the
rolls during the shaping process.

"3. In an apparatus for shaping wrought-metal headers or
other tubular bodies of irregular outline longitudinally, the
combination of oppositely disposed rolls having longitudinal

corrugations on their faces, and arranged to revolve adjacent to each other with the corrugations of the rolls alternating, and a mandrel adapted to support the inner faces of the tube between the rolls during the shaping process.

"4. A machine for forming tubes into longitudinal serpentine shape, consisting of oppositely disposed fluted rolls arranged to revolve in relation to each other so that the interdental spaces of the rolls alternate, combined with a mandrel supporting the inner face of the tube located between the rolls, having a bearing capable of meshing with the interdental spaces of the rolls and co-operating therewith to progressively produce the serpentine shape of the tube as set forth.

"5. In a machine for forming tubes into longitudinal serpentine shape, the combination with a set of rolls acting upon the exterior of opposite sides of the tube and adapted to form progressive depressions therein, of a mandrel acting upon the interior sides of the tube and co-operating with said rolls."

For this invention the appellee, Robert A. Barrett, filed his application on September 3, 1901. Charles Harter, the appellant, had a patent for the invention, or intended to cover it, issued to him on May 21, 1901, upon an application filed on March 25, 1901; but filed an application on July 9, 1902, for the cancelation and reissue of it.

Barrett, in his preliminary statement, alleged conception and the disclosure of the invention by him and the making of a drawing in December of 1899, and the making of a model in March of 1900, but no actual reduction to practice or manufacture of any kind for commercial use. Harter, in his preliminary statement, alleges conception and disclosure by him in May of 1899; the making of a drawing and further disclosure in October of 1899; and the completion of working drawings in March of 1901 in connection with his application for a patent filed in the same month. There has been no actual reduction of the invention to practice by him any more than by his rival, and no manufacture of the article.

The Examiner of Interferences in the Patent Office held in

favor of Barrett; the Board of Examiners-in-Chief in favor of Harter; and the Commissioner of Patents in favor of Barrett. From the Commissioner's decision appeal has been taken to this court on behalf of Harter.

The issues in this case relate to a *generic* invention, of which each claimant in his specifications presents different specific embodiments. Harter is the senior party, and has a patent for the invention; and a great burden is therefore imposed upon Barrett to prove his case beyond a reasonable doubt. This burden he has successfully sustained in the Patent Office; and he comes to this court with the advantage of two of the three decisions of the tribunals of that office in his favor.

The case is greatly simplified by the condition of the testimony and the admissions of the parties. It is proved beyond question that as early as the spring of 1900 Barrett had working drawings and a model made of the invention; and that Harter saw them at the time, understood their construction and operation, and said nothing whatever about any previous conception or disclosure of it by himself, notwithstanding that both parties were at the time in the employment of "the Stirling Company," at Barberton, Ohio, which was engaged in the manufacture of boiler headers, and whose superintendent seems to have solicited suggestions from its employees for the improvement of the manufacture of such boiler headers. All this is admitted by Harter. It must therefore be taken as an indisputable fact that Barrett had the invention in controversy for a year or more before the filing of Harter's application for a patent, which was on March 25, 1901, as heretofore stated. Consequently, if Harter would prevail in this interference, it behooves him to carry back the date of his conception and disclosure beyond the spring of the year 1900. This he has attempted to do by testimony tending to show that he disclosed the invention to his wife and to her father in 1899. But the testimony of Harter's father-in-law amounts to nothing; for he does not tell what was disclosed to him, except in a most vague and general way that is utterly useless for the purpose of the corroboration of Harter's statement. The testimony of Harter's wife is

specific and explicit enough; but the weight to be given to it is very doubtful.

If the testimony of a wife in favor of her husband in such a matter as the present is admissible at all, as to which we express no opinion, and if disclosure to a wife is disclosure of an invention to others or to the public in the sense of the patent law, about which grave doubt may well be entertained, certainly such testimony must be rigidly scrutinized and not lightly admitted as sufficient without some corroboration of its truth, in view of the difficulty, often amounting to impossibility, of contradicting it, or even of subjecting it to proper cross-examination. As the Commissioner of Patents in his opinion in this case has well pointed out, there is good reason to suppose that the witness might well have been mistaken in her dates. Under the circumstances of this case, we must regard her testimony as insufficient to establish her husband's claim of conception and disclosure of this invention.

Moreover, Harter's conduct is quite antagonistic to his claim of invention. It may be that his silence when Barrett showed his invention to him can be excused, as the Board of Examiners-in-Chief have held, although it is not apparent to us, any more than it was to the Examiner of Interferences and to the Commissioner of Patents, why he should not have spoken at the time; and it may be that he was justified in concealing his invention, if he then had it, from the company which then employed him and with whose officers he was on the most friendly and confidential relations. The Commissioner of Patents has held to the contrary; and this court in other similar cases has held to the contrary. *Slaughter* v. *Halle,* 21 App. D. C. 19; *Greenwood* v. *Dover,* 23 App. D. C. 251. But, however this may be, it is incomprehensible that, if Harter had the invention prior to the spring of 1900, when the device of Barrett was shown to him, and it became known to him that the Stirling Company would undoubtedly adopt and patent the invention, he should still persist, if the invention was his own and not derived from Barrett, for a whole year thereafter in the same silence, and not even seek to protect himself by an application for

a patent. This conduct is not consistent with the existence of a right on his part which he was desirous to protect. We cannot think that any such right existed.

Without further consideration of the testimony, which the Commissioner of Patents has well and ably considered, we are of opinion that the Commissioner was right in his decision, and that the appellee Barrett is entitled to judgment of priority of invention.

The Commissioner's decision is *affirmed.*

The clerk will certify this opinion and the proceedings of the court in the premises to the Commissioner of Patents, according to law.